May it please the court. My name is Jonathan Salaby, representing the appellant petitioner Boutifol. There's no dispute in this case that the jury instruction and accomplice liability instruction is constitutionally infirm. The question for this court is whether or not the jury instruction is harmless. And what is important in determining harmlessness is whether that jury instruction was central to the case. And in this matter, indeed, the jury instruction was very central to the case. It's what the case was all about. As a matter of fact, in closing argument, one of the defense counsel, in going over the language of the constitutionally infirm jury instruction stated, went into the difference between definite and indefinite articles. And he stated, that's what this case is all about. That is why we are here. There is no dispute by defense counsel that the defendants were present at the house of Bunny Bath, who was a person who had terrorized, committed a campaign of terror in the gang-related activities, who had just gotten out of prison for raping an 11-year-old cousin of one of the, of Fernando Angel, who was the person who, in fact, shot Bunny Bath. There was no dispute about that. But there was, but what the case was all about was, what was the intent of the parties. I'm not asking this court to sit in the place of the jury. But it is, I'm asking respectfully that the court evaluate the harmlessness of the error and apply the Brecht standard. We don't really, in the habeas review, get to just say that they make a mistake in the harmlessness review. Aren't we, under the various cases, constrained to see whether the state court was objectively unreasonable in the way it conducted the harmlessness review? It's more than semantics on review, and I'd like you to address that issue. Yes, Your Honor. What is important, the respondent relied on Inthevong, which is a Ninth Circuit case. But after Inthevong, the United States Supreme Court, the court that is most important, obviously, in habeas review in a determining harmless error analysis, came out with Fry v. Filler. And in that case, they made it clear that we no longer engage in this complicated two-step process, which, frankly, is very messy, difficult to untangle, a very unwieldy standard. And I believe that the Supreme Court saw the problem in Fry v. Filler. And in a later case, in Hedgepatch v. Polito, where there was harmless error, the Supreme Court remanded the case expressly for this honorable court to apply the Brecht standard. That was the instruction to this court, apply the Brecht standard. And that's a simpler and clearer way to resolve it. It's not an easy test to apply, and it's not an easy standard for petitioners, but it is a much more clear way for this court to apply. And it's important, too, that the Supreme Court has instructed that in reviewing and determining habeas, there's not the standard presumption of correctness for determinations of material fact. Rather, the question is, this court is to engage in a de novo review of the record and make its own determination under the totality of the record, to look at the jury instructions in the context of the record, and to look at the totality. What's interesting in this case is the accomplice jury instruction, which was the central dispute. At the time that the trial took place, the Washington State Supreme Court had not determined that the language used in this instruction was constitutionally infirm. When the direct appeal was filed, the Washington State Supreme Court has not determined that it was infirm. But during the direct appeal, the Washington State Supreme Court, in two cases, Roberts and Cronin, stated that the instruction was constitutionally infirm. And it's important to look at the Supreme Court decision in Sarasat. And Sarasat talks about whether or not the instruction parrots, that's the word that the Supreme Court uses, parrots the language in the state statute. In Sarasat, the language parroted the language. And Sarasat was an ambiguous instruction case. This is not ambiguous. Looking at it as the Court of Appeals did, as to whether there was evidence under BRIC with respect to principal liability as opposed to accomplice, and that's kind of what it boils down to, whether that's why it was potentially harmless, if you don't even need that to come into play, if you could sustain the verdict with respect to the principal liability. Would you comment on that? Yes, Your Honor. The district court disagreed with the Washington Court of Appeals and had doubt about whether or not, about the conclusion that the about saying any jury would have found Mr. Thole and others as principals. The problem with the analysis is not only is it incorrect, but that's not what I'm asking. In that place, the Washington Court of Appeals stood in the place of the jury. They were objectively unreasonable. There was no jury instruction defining what a principal was. And I frankly went through a lot of legal research to try to nail down that term myself. What is the difference between an accomplice and a principal? I'm an attorney, and I had a lot of difficulty nailing that down. I did get some guidance from the U.S. Supreme Court in an Ohio case that's cited in my brief that defined the principal as a person who actually shot the victim, who actually wounded or killed the victim. That is how the Supreme Court looked at the Ohio statute and how it defined principal. But the real issue is can the Washington Court of Appeals stand in the place of the jury and say this is what the jury would have decided when there was no special instruction, when there were two verdicts, Your Honors. There was an attempted murder verdict, and there was also a verdict for assault. So it's impossible to say what the jury was thinking. And what helps us is that there were two jury notes, one about the jurors being confused about intent, the question of intent, and the second saying, we're hung. We're set on one charge, but we're hung on the other. What should we do? And the court said, go back to the instructions. And those instructions were constitutionally infirm. Where in the United States Supreme Court case of Sarasan, the Supreme Court mentioned that in that case, the trial court, when they were in response to jury notes, said, go back to the instructions. And that the trial jury properly instructed on the elements of attempted murder and assault? No, Your Honor, because part of those elements was what is an accomplice? And that's why it's so central to this case, is what the trial is all about. Are you telling me that the court, that there was not a separate instruction defining the elements of attempted murder and assault? Yes, Your Honor, but the instructions... There was. Yeah, there were separate instructions for what is attempted murder and what is assault. And what the elements of those offenses are. And what the elements were, but they're linked to what is an accomplice. So you can't read one in isolation of the other. It says attempted murder, you have to have the following things, and it either says, the defendant, or one with whom he was an accomplice. So it's either or there, correct? So you don't need to be an accomplice. But the question... Yes, Your Honor, that is correct. That's kind of the principle issue, or the one you were addressing earlier. But the problem is, is that we don't know what the jury decided. They were instructed about accomplice liability. As a matter of fact, in closing argument, the prosecutor said, the accomplice instructions are very important. Those are the prosecutor's words. Very important. So it's impossible for this court to determine, what did the jury really determine? So if we wanna give deference to the jury verdict, give deference, that's a problem. What do we give deference to? We don't know that because there was an invalid theory and a valid theory. There were multiple verdicts, one for assault, so the jury could have concluded, yes, Mr. Thole is guilty of assault, and not concluded that he was necessarily guilty of attempted murder, that he intended to do it, but rather relied on the idea that any crime, intending to commit any crime would do. And it was clearly in play in this court, because the prosecutor's arguing that Mr. Thole was, essentially, had secreted an ammunition clip in the squad car, and that in that way, he was committing a crime. So he said, we could get you on assault, or we could get you on, essentially, accessory after the fact, the aiding afterwards. What about the red sweatshirt? The red shirt issue, which the witness said that was, the shooter was wearing a red shirt, and this individual sitting in the squad car with this gun was also wearing a red shirt. We've been trying to evaluate, of course, these are always difficult after the fact, because we're looking backward at a constellation of evidence, but that really was the district court's view, wasn't it, in denying the red shirt? They put that together and say, well, there really is sufficient evidence here, given that. That is the error, because the Washington State Supreme Court applied a Jackson sufficiency test, which is not the test we apply on habeas review. It's not Jackson sufficiency. It's not whether or not the jury could have convicted Mr. Thole. It's whether or not the error was harmless. And the red shirt, actually, like much of the evidence in that case, was hazy and sketchy. Someone had thrown up, had vomited, someone testified that someone had vomited on the red sweatshirt that Mr. Thole was wearing. When they searched the van, there was another red sweatshirt in there. Other people were wearing red garments. Fernando Angel was wearing a red, I believe, Angel's jacket. So, and the witness who said, oh, I saw someone with a red shirt in the back. It was dark. It was an unlit house. It was, and the witness was far away. And the witness said, I didn't see the face. I just assumed it was Mr. Thole, because he was wearing it earlier. So that's the kind of thing where it's a hazy, sketchy, conflicting record. Lots of people are talking about beating him up Seattle-style. Christy Fowler said that Luthi Thole was most vocal in saying, let's beat him up Seattle-style, which is a terrible thing to do, but not intending to commit murder. So we have a conflicting record. And read closely, and read closely, the Court of Appeals makes some errors. And the question is, it's not for this court to sit as a jury, not for the district court to sit as a jury, not for the Washington Court of Appeals to sit as a jury, but to evaluate harmless error. I'll reserve one minute for rebuttal, if it's OK with this court. Thank you for your argument, counsel. Thank you. Mr. Costin? Good morning. Good morning. I'm Alex Costin, Assistant Attorney General representing Washington Department of Corrections. There are two issues that are important in this case. And first is the harmless error adjudication by the state court. And Mr. Thole just invited this court to conduct its own de novo review and essentially ignore the harmless error determination. But since this is the habeas corpus case under the Supreme Court case of Mitchell versus Parza and this court's Intewong versus Lamarck, this court should conduct its own Brecht analysis only if it determines first that the state court adjudication was objectively unreasonable. And Intewong said that for this court to find that that adjudication was objectively unreasonable, it requires more than finding that the state court was incorrect or this court disagrees with the result that the state court reached. And here, the state court adjudication was objectively reasonable because it was in line with and a reasonable application of the United States Supreme Court case for several reasons. First, it determined that harmless error applies in an instructional error situation. And there is a long line of United States Supreme Court cases that so hold, the most recent one being Pulido, Nader, and several others that were cited by Nader. Then the state court correctly applied Chapman versus California beyond a reasonable doubt standard when it was reviewing whether the error was harmless. And finally, the court looked at the instruction in the context of the overall charge in all the evidence that was produced at trial. So this was- The counsel said that, at least I thought I heard him say that in his view, the state court had really used a Jackson analogy. No, I disagree with it, Your Honor. The court looked at all the evidence, which is in line with the Boyd versus California United States Supreme Court case. And for the state court adjudication to be not contrary to an unreasonable application of the United States Supreme Court precedent, it didn't have to cite the United States Supreme Court precedent under Early versus Packer. And it didn't even have to be aware of that, as long as its reasoning and end result do not contradict the results reached by the Supreme Court. The Washington courts have found a problem with the particular accomplice instruction given in this case. Is that correct? It was very close, Your Honor. The instruction that was found erroneous under- Did or did not the Washington courts find a problem with this particular instruction? They did. They did? Yes. And how would you summarize in a sentence or two the problem that they found? The problem was that the language could potentially lead to somebody convicted on essentially strict liability theory. For somebody committing a crime could be found guilty of the crime. How can we analytically separate that from finding the person guilty as a principle? If the problem with the instruction was that it led or tended to lead or tended to induce the jury to make an improper assumption that it is strict liability, how can you carve that out of his involvement in the whole offense? Well, for several reasons, Your Honor. First of all, Mr. Tall was charged as a principle and as an accomplice. And he was found guilty as a principle. And that's what the state court found, too, that the state court made this factual finding that this court should refer to that Mr. Tall was actually one of the shooters. He was not only an accomplice. He was the principle. And even if we'll look at the accomplice instruction, I mean, I understand that it's incorrect. But the- Let me try this way. Let's assume that the state had tried this case purely and simply on an accomplice theory. For whatever its reasons, the state thought that its proof would not be sufficient to prove guilt beyond a reasonable doubt as a principle. And it made clear from the onset that this was an accomplice case. Same instruction, same result. What should we do in that hypothetical cir- what would we do in that hypothetical circumstance? If there was- under the- in that hypothetical, Your Honor, this court should look at all the evidence. Would you still say it was harmless? That instruction- I'm- are we also including in this hypothetical that there was a state court adjudication or if there is- if there was no state adjudication, if the state court- No, I'm asking- I'm asking the same case. But it's true. The state decides we're going on our theory, make it or break it. Win or lose is accomplice. And they ask for and get the instruction given in this case. And the jury convicts, returns the verdict of guilty. And later, the Washington court say this is an improper accomplice instruction. What would be the proper result in that case? The first thing that this court should look at, again, would be the state court adjudication. How did the state court address that claim? Would you seriously argue that the proper conclusion in the hypothetical I just gave you would be anything other than reverse? Or, in our instance, grant the petition? Your Honor, since this is a state-aided petition, this court should look first at the state court adjudication. How does the court- I'm trying to ferret out the state's theory here. And I want to know whether you will concede if this case had been tried purely on accomplice theory, and this instruction were given, what the proper result would be, either in the Washington courts or on habeas in federal court. I disagree, Your Honor, that this court would have ruled that the result would be reversal. Because in light of all the evidence and in light of this prosecutor's attorney's closing statement, it is clear that the prosecutor, if we look at this instruction in artificial vacuum, we can think, oh yeah, this is really dangerous. Because Mr. Toll could be convicted as an accomplice to murder when he only agreed, let's say, to provide criminal assistance. But if this court looks at all the evidence as it was found at trial, and looks at the closing statement, because the prosecutor was saying, the prosecutor never said, convict Mr. Toll if he knew of the assault, or convict Mr. Toll of murder if he agreed to provide criminal assistance. The prosecutor said, Mr. Toll knew of the crime. He was recruited to commit this crime. He participated in the planning of the crime. And he actually participated in the actual execution of the crime. So, if we just take out the principle liability instruction and assume that it is only accomplice liability instruction, again, under all the evidence- I think I'm not, I'm obviously not communicating with my question, because you keep talking about the facts of this case. And I've asked you about a hypothetical case in which the state's sole and exclusive theory was accomplice liability. And this instruction were given. I guess you're on. Do you still think it would be okay for a Washington court to uphold the defendant's conviction? And if they did uphold it, it would be okay for a federal court to say, that's fine? I would say so. Your answer is yes. Yes, yes, sir. Okay. Going back to the state court harmlessness determination, not only it was objectively reasonable, there is also no United States Supreme Court case that would hold that such instruction violates federal constitutional rights. And this is another reason under Gary v. Musladin and Wright v. Van Patten to say that state court adjudication was not objectively unreasonable. There are several factual findings that the state court made that this court should presume are correct, which are that Mr. Toll was recruited to shoot Mr. Vatt, that Mr. Toll was told by Mr. Angel to knock and shoot, and that Mr. Toll was actually the shooter who was firing a .45 caliber gun because .45 caliber bullets were found in Mr. Vatt's house, there were .45 casings found near the house, and the police officer found a clip with .45 live ammo after he transported Mr. Toll. So, under Mitchell v. Sparza in an interview with Lamarck, if this court finds that the state court adjudication was objectively reasonable, it should end its analysis here and deny relief to Mr. Toll. But even if this court determines that it was objectively unreasonable and conducts its own independent analysis that Mr. Toll was speaking about earlier, under Brecht, it should still find that Mr. Toll was not actually substantially prejudiced by the erroneous instruction. Because, again, the state court made several factual findings that indicate that Mr. Toll's guilt was much stronger than the guilt that was, than the evidence that was found sufficient by this court and by the Supreme Court in Sarasat. And in Sarasat, Sarasat was only the driver. He was not the shooter. Nevertheless, both courts found that it was sufficient to convict him as an accomplice to murder. Here, the state court actually found that Mr. Toll was the shooter. And prosecutor's closing speech in this case is also very important because the state court actually found that the prosecutor never argued that Mr. Toll should be convicted of murder if he knew of or participated in a lesser crime. To the contrary, the prosecutor kept explaining to the jury that Mr. Toll knew that the crime was being planned, that he was recruited to commit this crime, and he participated in the planning and actual execution of the crime. And this court should look at the entire closing statement by the prosecutor. And it will determine when it reads the entire closing statement that the prosecutor never stated that Mr. Toll should be somehow convicted on a strict liability theory. And in conclusion, unless the court has any questions. I don't see any other questions. Thank you very much for your argument. Thanks for coming in this morning. You have about a minute for rebuttal, counsel.  Thank you, Your Honor. In fact, the Washington Court of Appeals was objectively unreasonable, even if you have to use that standard, because they made a critical error in misapprehending the record. The Washington Court of Appeals assumed a statement was in record, a statement of a codependent, and the statement was highly prejudicial. Because in that statement, the codependent said that the individuals were talking about wanting to get that fool and put him to sleep. And that is actually not in the record. In the pretrial proceedings, the trial court excluded that statement. So the Washington Court of Appeals is subjectively unreasonable in misapprehending the record, and assuming a very important statement about what the party's intent was, was actually a part of the record. And this case, this court has stated that when the record is misapprehended, then there can be no confidence in the verdict, because it was improper. And there's certainly no deference owed under those circumstances. Also, I'll cease and desist, but I appreciate it, Your Honor. Okay. Thank you. My understanding, counsel, is you were appointed by the court? Yes, Your Honor. And this is pro bono on your part? No, Your Honor, I'm a CJA. Okay, so you're on the CJA list? Yeah, yes, Your Honor. Thank you for accepting the assignment in any event. Thank both sides for their argument in this case. It's quite an interesting case, and it's submitted for decision.
judges: Hawkins, McKeown, Bybee